Today is United States v. Aragon, 18-1121. Counsel for appellant, you can begin. Josh Lee with the Federal Public Defender's Office for Mr. Aragon. Good morning, Your Honors. Again, Michael Johnson from the United States. Counsel, please. Good morning, Your Honors, and may it please the Court. The briefs in this case discuss some wide-ranging issues, but unless the Court steers me otherwise, I want to focus on a comparatively narrow one. And that's our argument that the District Court clearly erred in attempting to derive the net weight of the substances found in Mr. Aragon's car from the gross weight of the overall packages that were found in the car. So the drug quantity guideline applies only to drugs themselves and not to packaging containing the drugs. So to increase Mr. Aragon's sentence for the packages that were found in his car... Well, he deducted for the packaging materials. So he thought that he was deducting for what was there, but in fact he didn't. And that's because he clearly misunderstood the evidence. He was using the wrong photos in attempting to account for the weight of the packages. So when the defense objected and said, look, only the gross weights have been reported. We don't have any evidence of the net weight. The District Court said, well, I'm going to account for that by subtracting half a gram from a little plastic bag. And he initialed the photographs to show this court on appeal what he was looking at. And that is in our appendix at D7 and D8, where you can see the drugs in a little plastic bag. But the problem is that those photographs don't show what was weighed. The PSR says that it's the packaged weights that were reported. The photographs the judge was looking at don't show the drugs and packages. But these other photographs that we have do. If you look at... But he still subtracted a figure from the weight, the gross weight of the drugs. But he misunderstood the evidence in doing so. So if he says, look, I'm accounting for a baggie, but in fact you look at D1 through D5 and they're packaged in all this material. So it's a lot of plastic, maybe some packing tape, could be some foil underneath there. So what the judge needed to do is to say, look, I'm looking at D4 and D5. I see it in all of this packing material. I'm going to try to estimate how much packing material is in those photographs. So if the District Court clearly misunderstands the evidence of what was weighed, that's clear error. Well, okay, and so I want to be clear I understand your position. Are you saying that by virtue of the photos that he looked at, he did not fully understand that there were other photos that had additional packaging on them? Exactly. And that the record is clear that those photographs, not the ones he was looking at, show what was weighed. Okay. And it's... Show what produced the gross weight. Well, why wouldn't... Produce the gross weight. Exactly. Well, why wouldn't the photos he looked at also have been involved in the gross weight calculation? Well, they would have been involved, but there was additional gross weight that he didn't account for, and that's the problem. So I'll give you an example. How much are we talking about? I'm sorry? How much weight are we talking about? Well, so this Court can't determine that for the first time. Well, did the Public Defender Department determine it when they were defending this guy? The Public Defender? No, the Public Defender's position was we don't have any net weights in the record. There's not enough information to determine what the net weight was because we have these photographs showing all of this packaging, and how do we know... Didn't the PSR state what the gross weights were? The PSR stated the following are packaged weights. So to get to the... So he took off a sum that he guesstimated was enough from the packaging to bring it down to just the raw... But he didn't guesstimate for the packaging. He was guesstimating for a single plastic baggie, and that's not how the drugs were packaged. But anyway, the judge can't guesstimate. He can't speculate. This Court's case law is really clear on that. You can't just pick a number. And that's another... So your concern is not just this question of the PSR had packaged weights. Your concern also was the methodology. Is that correct? Because granted, Judge Moore is a very experienced criminal defense lawyer before becoming a judge. But nevertheless, the question is whether in the record there was a basis for this deduction, right? Right, so it's twofold. The first is he's looking at the wrong photographs. That's enough. The second is there's just no basis in the record for saying all of this packaging weighs half a gram. So let's assume, contrary to the facts, that he was looking at the right photos. There's just nothing in the record to say that all of this packaging is half a gram. And again, the government says you can estimate, and I'm sure it's going to say in its rebuttal argument that you can estimate. But you can't guess, and there has to be a reliable basis for the estimate. And so what this case is like is this court's decision in Higgins. So in that case, there was a police officer executing a search warrant, and he personally looked at these substances that were in coffee filters and said, you know, I'm going to estimate one of the coffee filters looks like it weighs about 100 grams. The other coffee filter looks like it weighs about 150 grams. And the court, this court, said that was clear error for the district court to rely on that because there's really no basis for estimating quantity from appearance. And that's what the judge did. Well, that's the evidence that we have of this packaging. You just have to be guessing about how much this packaging weighs. And even, you know, even if he were close to correct, were you situated to cross-examine his guess, his estimation? Let's assume it's not a guess, his estimation. No, we were not. We were not, and really we weren't permitted to make much of a record at all because whenever we, you know, she started making the net weight argument, he cut her off, said, I've already accounted for that. And then he said, you know, do you want to make a further record? She said, yes, your honor. And before she could get a word out, he says, do you know what B means? I know what B means. You better ask him what B means. It's heroin. And then he said, let me make my ruling. So there really wasn't any way to make a record. There's another problem with the judge's findings. So he's looking at the wrong pictures. There's not enough information. You can't speculate. So we shouldn't be speculating, but if we're going to speculate, this half a gram finding isn't close to correct. And you know that if you look at D5, you can see what's probably the suspected methamphetamine because it's the biggest package. You can see what was weighed in D5. You've got this Ziploc bag. And underneath the Ziploc bag, you've got all of this wrapping. And then if you go to D8, you have this third layer of this little, what looks like the bottom of a cigarette wrapper. So there's a lot of packaging there. We can deduce that from the photos. Then if you look at the substance itself, you've got this little cigarette wrapper. And then the suspected meth takes up maybe a quarter of that. There's just no way that that weighs an ounce. There's just no way that it does. The packaging is a lot bigger than the actual substance. And without any evidence about whether meth is denser than thickly wrapped plastic, you'd have to say that the plastic probably weighs a lot more than these little chips of methamphetamine. Such that the gross weight that you had was mostly the wrapping and a half a gram wouldn't cut it. So I think we shouldn't be speculating. But if we're going to speculate, it sure looks like the packaging weighs a lot more than the meth. So that's essentially what I have on that. I have one other issue. Please, go ahead. One other issue that the government raises is this issue of preservation. And I think a couple of things about that. The first is that the government's argument is just foreclosed by this court's Harrison case. So in that case, all the defense did is say, we object to the amounts that are on there. That was all the defense said. And the court said that, well, the district court then went on to say, I'm making the findings, I'm adopting the PSR because it was based on the trial testimony. The defense didn't then go take exception to the judge's ruling and say, well, I've already argued there's insufficient evidence, but in fact the PSR was not based on the trial testimony. But this court said that just saying I object to the amounts that were on there was sufficient to preserve error in the judge declaring the PSR as being based on the trial testimony, when in fact it wasn't. And so we have an even stronger record here because we specifically object to this net weight gross weight issue. We told the judge you can't do that by just taking off for a little plastic baggie. You haven't accounted for how these things are wrapped. So I think this is preserved. It's clear error for a number of reasons, and you should vacate and remand for resentencing. There was no question here, was it, that these drugs, whatever their quantity, were relevant conduct in this case? So I don't think that there's a question that it's relevant conduct if the identity and the quantity was proven by a preponderance of the evidence. Well, the quantity has nothing to do with whether it's relevant conduct. It could be unless it's clearly user quantities. It could be relevant conduct, right? And this is not user quantities. You're not saying that, are you? That's not our argument. And no, it's also not our argument that he was not responsible for these, that these weren't connected to the other offenses. We're solely focused on the quantity and, to a lesser extent, the identity. But the main issue is the quantity. Well, I ask that because, in the brief, you're taking exception to the district court's inquiries here. And I'm very troubled by this plea agreement. I want to understand how you think it's okay to have a plea agreement in which you hide relevant conduct from the court when the court is responsible. It is its job to make a determination of an accurate calculation of offense conduct. Do you think this is okay to do this? I think that the guidelines allow for it. And what provision do the guidelines allow for that? Well, actually, it's Rule 11 where it says that the parties can stipulate to relevant conduct. As to what is relevant conduct, but, I mean, the notion that you know it's relevant conduct, and then you say, oh, well, you know, this is inconvenient. This is not going to help our deal. So we put it to the side and come up with another deal, which is why the court thought there was something wrong here, right? I think they didn't hide anything from the court because they told them they were limiting the relevant conduct. After an inquiry was made by the court indicating that something looked fishy here, which, in fact, it was because the court wasn't told about drugs that existed and were relevant conduct. I also think it's proper for the parties to stipulate where the evidence is dubious at best. And here there just wasn't enough evidence to prove this up as an inquiry. The defense lawyer below acknowledged that this was relevant conduct. I looked at it as recently as last night, and that, in fact, was the case. So it's not a question of whether you thought it was relevant conduct. You knew it was, and then you decided, oh, well, you know, this is inconvenient. We're going to just put this aside and let the court create a plea agreement based upon things that weren't true. It wasn't true. So my admonition to you is, no, it's not okay. And that's why the court, as it indicated, was not able to do its job because it didn't know what the situation was. Well, again, I think that the court can reverse on this narrower ground and doesn't have to consider that issue. So that would be my position. And I'll reserve the remainder of my time. Thank you. Good morning, Your Honor. Good morning, Your Honors. Counsel. Here's the evidence that supports the district court's determination as to the net weights of the drugs found in the vehicle. There was a statement under penalty of perjury by Task Force Officer Matthews in the search warrant return that the suspected heroin weighed 11.5 grams and the suspected methamphetamine weighed 29.2 grams. There is a statement from Special Agent Cohen to the probation office that the methamphetamine weighed 29 grams and the heroin weighed 11.5 grams. That statement, however, was not part of the record, right, beyond being in the PSR? It is only in the PSR. That's correct. The PSR was challenged. So what good does that do us? Because the challenge was raised and the question is then, is it accurate? It is a hearsay statement, but the district court could consider it. It is some of the – How is that different than adopting the PSR when the PSR is challenged, which we said you can't do? I'm sorry, Your Honor. How is that different than here's the PSR, this is a statement, objection, it's inaccurate. Well, I adopt the PSR. That's error, right? You've got to hold a hearing, you've got to decide whether there in fact is truth to that statement, right? And Special Agent Cohen was present at the sentencing hearing. And did he testify? He responded to the court's questions regarding a separate issue regarding whether – The identity of the drugs, but not regarding the quantity. That's right, Your Honor. The district court did review the photos and the district court did initial the photos that it reviewed. The district court did subtract some weight from the gross weight in order to arrive at net weights. And the PSR also indicated that – As to how much that weight was, how much the faculty weight was. The district court could rely on the statement in the PSR that following the search of the vehicle, clear plastic baggies, clear plastic sandwich baggies, and that's a quote from the PSR, were found in the vehicle. And this is volume two of page 13, paragraph 13 of the PSR. And so the district court could reasonably conclude that the packaging material that was used to package the substances found in the vehicle were clear plastic sandwich bags. And where do you get from that to a half a gram? And particularly when you look at these photos in which the wrapping is not in any way the uniform as it relates to these drugs. And so there is different wrapping in these drugs.  The court estimated that the materials weighed half a gram. And the court can rely on estimates as to drug quantities and estimates as to wrapping in reaching a determination as to the net weight. It certainly can, but it usually does that based upon evidence that has been presented before it. There was no evidence here. The court eyeballed this and came up with a half a gram, right? That's correct, Your Honor. Okay. And was the defense lawyer able to cross-examine this eyeballing? The defense counsel could ask the court. Oh, really? Could ask the court, yes. And defense counsel did object to this. And this is an issue that counsel raised a moment ago. The issue was whether this issue was preserved or whether plain error review applies. And after the government reviewed the record in this case and reviewed the other material in the reply brief, the government agrees that there was an objection made to the weights of the packaging material. So the standard review here is the clearly erroneous standard. We are not pressing the plain error standard anymore as to the weights of the packaging material. And so the district court is only required to rely on information with a minimum indicia of reliability. But the only information as it relates to the net weight is in the district court's head, right? The district court says, oh, I know what this is. This is packaging. I'll deduct a half a gram. And where is there any evidence in the record as to the foundation for that half a gram? I mean, we all know Judge Moore is a very experienced criminal defense lawyer, was. But there's nothing in the record that talks about this. That's correct. A couple points, Your Honor. Number one, the district court can rely on its common sense. Common sense? I'm sorry, I can't do that. And I think I'm not stupid. I mean, I can't sit there and look at that and say that's a half a gram. The district court recognized that its estimate as to the packaging may not have been accurate. And the district court said it didn't matter, that even if the drugs were packaged in a hefty bag, that it wouldn't matter. The district court said that if the drugs were in a hefty bag, that Mr. Aragon would still be in the same guideline range. The ceiling, or rather the floor here, was 100 kilograms of marijuana equivalency. And the district court found that the base offense level was 24, based on its finding that 142.6 kilograms of the marijuana equivalency were found. The sales to the confidential human source, the three sales, and then the heroin and the methamphetamine arriving at 142.6 kilograms. So the district court accounted for the fact that it may have not estimated the packaging accurately, but the difference between the court's estimate arriving at 142.6 kilograms and the floor, which was only 100 kilograms, is a significant difference. And let me ask you, Mr. Johnson, on that. It was at least my understanding that the defense contests the notion that, I mean, the lack of prejudice would make sense. Okay, that's a logical thing to say, that even if the court aired some in its estimation, it wouldn't have harmed him because of where he would have been on the offense level. But is that uncontested? I mean, is that, in fact, the case, that it would not have impacted the guidelines calculation? If the court had not included the heroin and methamphetamine from the car? I'm sorry. And I thought the point was, even if the court was off on its deductions, that would not have had any impact in what the ultimate offense level was because of the drugs that were in question in totality. That's correct, because the court gave a very conservative estimate as to the packaging material in the car. But because the resulting marijuana equivalency was 142 kilograms and the floor was only 100, the court took into consideration the possibility that it may be making some errors in estimating the packaging. And that all turns on whether we agree with the court's identification, which was, again, an eyeball identification of what these drugs were, right? That's correct. But the court doesn't have to find that the- Not what the drugs were, the weight of the drugs. There's no question about what they were. Right. There is no question about- Well, that's not being pressed this morning. It's not being pressed this morning, but it's pressed in the brief. That's correct. And we did address that in the brief and on our answer brief. But the court doesn't have to find that- This court doesn't have to find that the district court did not clearly err in finding 142.6 kilograms of marijuana equivalency. The court simply has to find that the district court did not err in finding that the net weights were above the 100-kilogram level. So it's not the court's finding of 142. It's simply the finding that the amounts were above the 100-kilogram floor. Let me ask you, if I may, on that. Let's assume for the moment that you're correct about the fact that it really wouldn't matter in terms of reaching the threshold under the guidelines. Does that mean that the court can apply any methodology as long as it would not have been prejudicial? In other words, does it matter to us whether the court rolled dice and decided that I'm going to pick this number as opposed to this number? And just so long as this number did not impact the total amount, the methodology still matters, doesn't it? It does matter. The district court did review the photographs, did consider the information in the PSR, and did consider the information in the search warrant return and also in the statements by Special Agent Cohen. The court considered all of these factors in determining that the packaging weighed the amount that the court found, which was 0.5 grams for each of the package, one heroin and one methamphetamine. The clear air standard generally is favorable to the government, as the court knows. The district court was only required to reach an approximation as to the packaging weights. It wasn't required to determine those with anything more than a mere approximation. We submit that there was no clear air by the court in reaching the conclusion that it did as to the packaging. I have one quick additional comment, Your Honors. We noted as to the issue regarding the methamphetamine, whether the material found in the car included methamphetamine, we provided websites showing that the slang term clear is a reference to methamphetamine. We did not include websites or other information indicating that the term zip that the district court relied on is a reference to an ounce. We would request the opportunity to submit a 28-J letter to the court. We have three websites that show that the term zip is a slang term for ounce. UrbanDictionary.com, Internet Slang. Oh, that's Urban Dictionary. I follow that quite closely. I mean, are you saying that we should take judicial notice based upon what's in the Urban Dictionary as to what the definition is of drugs? There are also in our Rule 28-J letter, Your Honor, if we can submit one, we did locate 16 federal court cases where courts have recognized that the term zip is a reference to an ounce. Standing without any reference to any evidence that would have supported that determination? I will review that. Because there was no evidence here, right? This is what the court said out of its own head? Yes, that's correct. Okay. And before you sit down, I want to know whether you defend this plea agreement that was restructured here so as to exclude what everybody agreed was relevant conduct. And I've never seen such a thing. Tell me that's not okay. It is not okay, Your Honor. The government, the U.S. Attorney's Office, would never normally present a drug case in this fashion and proceed in this fashion in a drug sentencing matter. So we submit that the procedure here was not one that our office would typically follow. The evidence here is sufficient to affirm under the standard review here, the clear error standard review. If the court has no further questions, we ask the matter be affirmed. Thank you. Thank you. A couple of things. First, the government says that what you apply the clear error standard of review is, is to the ultimate offense level that the judge arrived at. But that's not correct. What you apply the clear error standard of review to is what Judge Holmes said, the court's methodology and its finding that the packaging weighed 0.5 grams. So once you get there, then you ask, was it nevertheless harmless? Because it would have been offense level 24 anyway. And the distinction there is important because on a harmless error question you ask, does the record compel a district court to find offense level 24? And it definitely does not compel that. A district court could reasonably find that attributing any weight to the packages of the drugs would be too speculative, that there just wasn't enough information. So a district court could reasonably find that. To be clear, there are two parts of the clear error standard. One is arbitrary, whimsical. The other is without foundation in the record. The part that says that it wouldn't matter in terms of the guideline offense calculation, that could go towards the record thing. If there's enough in the record, despite what the district court here did, that could be fine. The question would be whether the methodology the court used was one that was arbitrary. I think that's right. But then the question about the record supporting it would be whether the record supports 0.5 grams, not whether the record supports the offense level. And so whether the record supports the offense level, you have to ask whether it compels a finding, and it doesn't compel a finding. Well, how much would have to come off to get below 100 kilos? So I've cited several examples in my brief. If the packaging weighed about 65% of the total weight of the package, that would take them down to offense level 22. And I've cited lots of examples of cases, including cases from this court, where there was an even greater disparity between the packaging and the net weight. Thank you. So I'd ask that you vacate and remand for re-sentencing. Thank you, counsel.